# KATZMELINGER
370 LEXINGTON AVENUE, SUITE 1512
NEW YORK, NEW YORK 10017
www.katzmelinger.com

Katherine Morales  
Katz Melinger PLLC

t: 212.460.0047  
f: 212.428.6811  
kymorales@katzmelinger.com

April 9, 2024

**VIA ECF**
Honorable Victoria Reznik
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

  Re: *Victor Acevedo v. El Bandido Restaurant Inc. et al.*
    **Civil Action No. 7:22-cv-08180-VR**

Your Honor:

  We are counsel for the plaintiff, Victor Acevedo, in this action and write jointly with counsel for the defendants to seek approval of the parties' agreement to settle Plaintiff's claims, which include claims for unpaid minimum and overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"); failure to pay spread of hours and to timely pay wages pursuant to the NYLL; and for wage statement and payroll notice violations pursuant to NYLL §§ 195 (1) and (3).

  The parties write to respectfully request that the Court approve the parties' settlement agreement, a copy of which is submitted herewith as **Exhibit A** and allow the parties to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41. As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

**Plaintiff's Claims**

  Plaintiff alleges that he was employed by defendants El Bandido Restaurant Inc. a/k/a El Bandido Spring Valley a/k/a El Bandido Middletown, Tonituah Tello, and Angelica Tello (collectively, "Defendants") as a prep cook and dishwasher from in or around January 2011 until on or around August 30, 2021. Plaintiff alleges that throughout the relevant time period he maintained the following work hours:

- from in or around September 23, 2016 until in or around December 2018, he regularly worked six (6) days per week, Mondays through Wednesdays from approximately 12:00 p.m. until between 9:00 p.m. and 10:00 p.m.; Fridays and

- Saturdays from approximately 12:00 p.m. until 11:00 p.m.; and Sundays from approximately 12:00 p.m. until 9:00 p.m., with a daily two (2) hour break, for an average of approximately forty-seven and a half (47.50) hours worked per week;

- from in or around January 2019 until in or around December 2019, he regularly worked six (6) days per week, Fridays through Wednesdays from approximately 7:00 a.m. until 11:00 a.m. and from approximately 4:00 p.m. until 11:00 p.m., with no meal or rest breaks, for a total of approximately sixty-six (66) hours worked per week;

- from in or around January 2020 until in or around May 2021, he regularly worked six (6) days per week, Mondays and Tuesdays from approximately 1:00 p.m. until between 10:00 p.m. and 10:30 p.m.; Wednesdays from approximately 12:00 p.m. until 10:00 p.m.; Fridays and Saturdays from approximately 12:00 p.m. until 11:00 p.m.; and Sundays from approximately 12:00 p.m. until 9:00 p.m., with a daily two (2) hour break, for an average of approximately forty-seven and a half (47.50) hours worked per week; and

- from in or around June 2021 until on or around August 30, 2021, he regularly worked six (6) days per week, Mondays, Tuesdays, and Thursdays from approximately 12:00 p.m. until 8:00 p.m.; Fridays and Saturdays from approximately 1:00 p.m. until 10:00 p.m.; and Sundays from 1:00 p.m. until 9:00 p.m., with a two (2) hour break on Mondays, Tuesdays, Thursdays, and Sundays, and a one (1) hour break on Fridays and Saturdays, for a total of approximately forty (40) hours worked per week.

Plaintiff further alleges that from the beginning of the relevant time period until in or around December 2017, Defendants paid him a fixed weekly rate of $350.00. From in or around January 2018 until in or around December 2018, Plaintiff alleges that Defendants paid him a fixed weekly rate of $400.00. From in or around January 2019 until in or around May 2021, Plaintiff alleges that Defendants paid him at a fixed weekly rate of $500.00. Lastly, from in our around June 2021 until on or around August 30, 2021, Plaintiff alleges that Defendants paid him $13.50 per hour for all hours worked each week, including the hours he worked over forty (40) per week.

Plaintiff alleges that Defendants violated the FLSA and NYLL by failing to compensate him with minimum and overtime wages, and that Defendants violated the NYLL by failing to compensate him with spread of hours wages and failing to provide him with payroll notices and accurate wage statements as required under NYLL §§ 195(1) and (3).

Based on the foregoing, Plaintiff estimated damages of approximately $48,791.63 in unpaid overtime wages, $2,948.00 in unpaid minimum wages, and $7,557.80 in unpaid spread of hours wages, plus liquidated damages and damages for payroll notice and wage statement violations as well as interest, costs, and reasonable attorneys' fees.

**Defendants' Defenses**

Defendants adamantly deny any and all wrongdoing and maintain that Plaintiff was properly paid for all hours worked. Specifically, Defendants produced alleged time records, which Defendants argued supported their argument that Plaintiff did not regularly work overtime hours and that if he did, Plaintiff was properly compensated with overtime wages. Defendants also disputed a significant portion of Plaintiff's employment term. Specifically, Defendants argued that Plaintiff was not employed by them prior to 2020. Lastly, Defendants contended that that they do not have the financial resources to afford a substantial settlement or judgment in this matter, including citing to a seizure by the Internal Revenue Service of El Bandido Restaurant Inc. in or around October 2023.

The parties participated in a settlement conference with the Court on January, 18, 2024 as well as a follow-up settlement conference on March 4, 2024, where the parties agreed to settle this matter for a total of $22,000.00, with an initial payment of $4,000.00 to be paid on or before June 1, 2024 and the remaining $18,000.00 to be paid through monthly payments in the amount of $1,000.00 each beginning on July 1, 2024 until and including December 1, 2025. The amount agreed upon reflects a mutual desire to reach an amicable resolution in this matter without additional litigation. As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

**The Proposed Settlement Should Be Approved**

1. The settlement amount is fair and reasonable

The parties' proposed settlement agreement warrants approval as it is fair, reasonable, and equitable. Indeed, the agreement reflects a reasonable compromise of Plaintiff's FLSA and NYLL claims rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of overreaching by Defendants. To the contrary, Plaintiff is represented by competent counsel and the settlement was reached after extensive negotiations between the parties, including participating in two settlement conferences before this Court on January 18, 2024 and March 4, 2024. Moreover, the settlement amount, $22,000.00, results in a recovery to Plaintiff of $12,635.78. This sum is fair and reasonable given the stage at which the settlement was reached; the time and costs associated with continued litigation; the risk that Plaintiff would not be prevail on all of his claims after a trial; and the risk that Plaintiff would be unable to collect on a judgment against Defendants who adamantly asserted that they lack the financial resources to afford a substantial settlement amount or judgment in this matter.

2. The settlement agreement was the result of arm's length negotiations by the parties

The proposed settlement is also the product of negotiation between parties represented by experienced wage-and-hour counsel following extensive settlement discussions, including two settlement conferences before this Court. Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims; however, the arm's length bargaining between the represented parties, along with the information exchanged during formal discovery and during settlement negotiations, weighs in favor of finding the settlement reasonable. Moreover, nothing

in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. Given that the parties completed fact discovery, including taking the depositions of the individual defendants in this matter, and through candid discussions between counsel, the parties can assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g.*, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 U.S. Dist. LEXIS 47637, at *12 (S.D.N.Y. Apr. 2, 2013) (courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted). Furthermore, since Plaintiff is no longer employed by Defendants, coercion is unlikely. *See, e.g.*, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC,* 2014 U.S. Dist. LEXIS 2111, at *2-3 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here") (citation and internal quotation marks omitted).]

Additionally, after weighing the factors, the settlement should be allowed to proceed, as: (i) Plaintiff's alleged injuries will not recur as Plaintiff is no longer employed by Defendants; (ii) Defendants explicitly deny any wrongdoing; and (iii) continuing to develop the record will only serve to enlarge costs on both sides and will not serve any useful purpose. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 335-36.

3. <u>Plaintiff's counsels' fees are reasonable</u>

Lastly, the parties agree that the settlement amount is a reasonable compromise of all parties' positions, and the proposed amount of attorneys' fees is also fair and reasonable as Plaintiff's counsel's own compensation does not adversely affect the extent of the relief obtained by counsel on behalf of Plaintiff. *See Wolinsky,* 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest and there was "no reason to conclude that plaintiffs' counsel benefited at the expense of their clients"). Thus, the settlement does not favor Plaintiff's counsel over Plaintiff.

Under the proposed agreement, Plaintiff's counsel would recover $3,046.33 as reimbursement for costs and expenses[1] and $6,317.89 in fees. Under Plaintiff's contingency fee agreement, Plaintiff's counsel is entitled to recover, out of Plaintiff's settlement amount, fees totaling one-third of any amounts recovered on behalf of Plaintiff after reimbursement of costs and expenses. This fee should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, at *25 (S.D.N.Y. Jan. 28, 2014); *see also Rangel v. 639 Grand St.*

---

[1] Plaintiff's costs and expenses are as follows: $402.00 for the initial filing fee, $218.00 for service of process, $261.38 for translation services, and $2,164.95 in court reporter costs and expenses, for a total of $3,046.33 in costs and expenses.

*Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to Plaintiffs' retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). The proposed fee award of one-third should also be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.,* 2013 U.S. Dist. LEXIS 172102, at *9-10 (S.D.N.Y. Dec. 6, 2013) (approving settlement and noting the consensual nature of the fee arrangement).

As indicated by Plaintiff's counsel's time records, attached hereto as **Exhibit B,** Plaintiff's counsel has spent a total of 281.80 hours on this matter as follows: Nicole Grunfeld, 27.80 hours; Katherine Morales, 84 hours; Eliseo Cabrera, 124.80 hours; Jonathan Trinidad-Lira, 45.20 hours. Plaintiff's counsels' hourly rates - $525.00, $375.00, $350.00, and $325.00, respectively – are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *See Quispe v. Stone & Tile Inc.*, 2022 WL 960926, at *6 (E.D.N.Y. Feb. 1, 2022) (approving hourly rate of $500.00 for a solo practitioner with over 20 years of litigation experience); *see Vega v. K & C Interior Constr. Corp.*, No. 18-CV-00182, 2018 WL 4376486, at *7 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted*, No. 18-CV-182 (ARR), 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018) (noting that courts in the EDNY have awarded hourly rates up to $200 for recent graduates, $300 for associates, and $450 for partners) (citations omitted).

Ms. Grunfeld is a partner at Katz Melinger PLLC, where she has worked for more than nine years. She earned her B.A. in 1998 from Yale University, and her J.D. in 2004 from New York University School of Law. Ms. Grunfeld was admitted to practice in the courts of New York in 2005 and New Jersey in 2018, and has focused on Plaintiff's employment matters for more than fifteen years. She currently serves as Vice President of the Board of the New York chapter of the National Employment Lawyers' Association.

Ms. Morales is an associate at Katz Melinger PLLC. She earned her B.B.A. from Pace University in 2014 and her J.D. from Georgetown University Law Center in 2017; she was admitted to practice in New York in 2018 and New Jersey in 2020. Prior to joining the firm in 2017, Ms. Morales worked on various employment law matters while maintaining part-time positions with private law firms, universities, and nonprofits. Ms. Morales focuses her practice exclusively on employment law matters.

Mr. Cabrera is an associate Katz Melinger PLLC. He earned his B.A from University of California, Berkeley in 2007 and his J.D. from City University of New York School of Law in 2015. Mr. Cabrera has focused his practice on employment law since May 2019 and has been a member in good standing of the New York Bar since 2017.

Mr. Trinidad-Lira is an associate at Katz Melinger PLLC, having earned his B.A. from Fordham University in 2019 and his J.D. from Seton Hall University School of Law in 2022. Mr. Trinidad Lira has focused his practice on employment law since joining the firm in August 2022. Mr. Trinidad Lira was admitted to practice in New Jersey in 2022 and to the New York Bar in 2023.

The $6,317.89 fee sought by Plaintiff's counsel is significantly less than Plaintiff's counsel's "lodestar" amount of $104,465.00 and is therefore reasonable. *See e.g. Hernandez v. Merrill Lynch & Co.*, 2013 U.S. Dist. LEXIS 42681, at *27-28 (S.D.N.Y. Mar. 21, 2013) (approving a 3.8 multiplier and collecting cases). As set forth herein, Plaintiff's counsel negotiated a favorable settlement for Plaintiff, which will allow Plaintiff to avoid the significant risk of either receiving an unfavorable outcome in this matter or, if Plaintiff ultimately prevailed on his claims, attempting to enforce a judgment against Defendants who lack the financial resources to satisfy a judgment.

Accordingly, we respectfully request judicial approval of the parties' proposed settlement agreement, and further request permission to submit a stipulation of dismissal with prejudice consistent with the requirements of Fed. R. Civ. P. 41(1)(a)(ii).

Respectfully submitted,

| | |
|---|---|
| */s/ Katherine Morales* | */s/ Eli Sarfaty* |
| Katherine Morales, Esq. | Eli Sarfaty, Esq. |
| Katz Melinger PLLC | Sarfaty & Associates, P.C. |
| 370 Lexington Avenue, Suite 1512 | 80 NY-59 (Rte 59) |
| New York, New York 10017 | Monsey, New York 10952 |
| T: 212-460-0047 | T: 845-377-5845 |
| F: 212-428-6811 | F: 212-401-4720 |
| kymorales@katzmelinger.com | eli@59law.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |